OCTAVIUS O. COTTLE and CLAYTON L. HILL, as Executors, etc., of JOHN J. P. READ, Deceased, Appellants, *v.* THE NEW YORK, WEST SHORE AND BUFFALO RAILWAY COMPANY and HORACE RUSSELL, as Receiver of THE NEW YORK, WEST SHORE AND BUFFALO RAILWAY COMPANY, Respondents.

*Condemnation proceedings — an action on an award is one upon contract — counter-claim — res adjudicata.*

An award, made under chapter 140 of the Laws of 1850, as amended, in condemnation proceedings instituted by a railroad corporation, is in its nature and effect a judgment against the corporation for the payment of money, which, by the terms of the statute, may be enforced by an action at law or in equity.

An action brought by the owner of real property against a railroad corporation, to recover an award therefor made in condemnation proceedings, is an action

upon contract, and the railroad corporation may properly interpose therein a counterclaim for damages resulting from the alleged failure of the owner to perform a contract made, pending the condemnation proceedings and with a view to their adjustment, by which he agreed to sell the land in question to the corporation for an agreed price and also to pay certain taxes which were liens thereon.

Where it appears that a question as to the validity of certain taxes as liens upon the land condemned was necessarily involved and decided in the condemnation proceedings, the decision made therein cannot be questioned collaterally while those proceedings remain unreversed.

APPEAL by the plaintiffs, Octavius O. Cottle and another, as executors, etc., of John J. P. Read, deceased, from so much of a judgment of the Supreme Court in favor of the original plaintiff, John J. P. Read, entered in the office of the clerk of the county of Erie on the 26th day of March, 1886, upon the decision of the court rendered after a trial at the Erie Special Term, as required him to execute a deed, and from so much as deducted from the amount adjudged to be unpaid from the award made to him as compensation for the land described in said judgment and as set forth in the complaint, the sum of $1,000 damages, and from so much of said judgment as permitted a redemption of the land without paying the full sum of $12,556.98, and interest thereon from February 21, 1884, without any deduction for damages, and also from so much of said judgment as failed to award him costs.

John J. P. Read was the owner of premises situate on Carroll street, in the city of Buffalo, 93 feet front and 100 feet in depth upon which were buildings. The defendant, commonly known as the West Shore Railroad Company, desired these premises as a terminal point and for other purposes of its road, and commenced condemnation proceedings in April, 1883, to procure title to these premises under chapter 140 of the Laws of 1850 and the various acts amending the same, by presenting a petition to a Special Term of this court in Erie county. Such proceedings were suspended, however, in May, 1883, and the parties entered into a contract, in writing, on the thirty-first day of May of that year, whereby Mr. Read covenanted to sell to the West Shore Company the premises in controversy for the sum of $13,500, to be paid within one month from the date of the contract, upon the payment of which Read covenanted to convey the premises free and clear from all incumbrances,

except certain judgments, but that the deed should contain full cove-
nants including a covenant against incumbrances, and the company
was indemnified against the judgments. And it was further pro-
vided that all taxes and assessments which were liens upon the
premises at the date of the contract should be paid by Read, and
that the city taxes for the year 1883 should be paid by the company.
The deed was prepared by Read, but the company refused to receive
it and pay the consideration, because it appeared that there were
taxes unpaid which had been imposed by the city of Buffalo and
the county of Erie in a large amount which were liens upon the
premises, and which Read had not paid.

The company, being unable to procure title on account of the lien
of the taxes, resumed the condemnation proceedings in the fall of
1883. Read filed an answer to the petition in those proceedings con-
testing the right of the company to condemnation, in which he set
up the contract for the sale of the premises above set forth, and
alleged that he had performed the same, and that he was ready to
complete the purchase and execute a deed. The matter took the
form of a trial before a Special Term of the Supreme Court in Erie
county, the company insisting that Read had not performed his
contract in paying the taxes, and that subject being litigated before
the Special Term the court decided that the condemnation pro-
ceedings should proceed, and appointed commissioners under the
statute, holding, in effect, that there were unpaid taxes which were
a lien upon the premises, and which Read was in default for not
paying. The commissioners proceeded to examine the premises and
hear the proofs and allegations of the parties, and made their report
on the 26th day of December, 1883, awarding Read $14,500 as a
compensation for his property, and directed that the company should
pay him $12,566.98 thereof, and that the remainder should be depos-
ited in the Erie County Savings Bank to protect the company as to
the taxes of the city of Buffalo and the county of Erie. This
deposit as to taxes was made pursuant to a stipulation of the parties.

The said report, upon the motion of the counsel for Read, was
confirmed on the 16th of February, 1884, by the Supreme Court,
and the order of confirmation was duly entered and a certified copy
thereof was, by direction of the company, recorded in the clerk's
office of Erie county on the 21st day of February, 1884. Read

retained possession of the property, and, in July, 1885, commenced this action, in which the complaint alleged the making of the award, the deposit for taxes and non-payment of the $12,556.98 which Mr. Read was to receive and the demand thereof of the company; and demanded a judgment for a foreclosure of the lien for that amount upon the premises and for other relief.

The defendant answered, alleging a breach of the contract on the part of Read in not paying the taxes, and setting up a counterclaim of $1,000 and interest, the difference between the contract price of the land and the amount awarded by the commissioners and for commissioners' fees, witnesses' fees, stenographer's fees and other expenses which the company had incurred by reason of the alleged breach of contract of defendant.

The issue thus framed was tried at a Special Term of the Supreme Court in Erie county, and the trial judge made extensive findings of fact and conclusions of law, among which were the following: That upon the execution of the contract between the parties on the 31st day of May, 1883, there was a large amount of taxes due the city of Buffalo and the county of Erie, which were liens upon the premises, which Read had refused and neglected to pay and had never paid; that Read was in default in not performing the said contract; that the company was not in default; that the company was entitled to have set off against and deducted from the amount of the unpaid award for such lands, which was due to Read, the damages which ensued from his breach of the contract; that in the damages so to be set off was included the additional amount awarded by the commissioners for the said land over and above the contract price, to wit, the sum of $1,000, and directed that judgment should be entered establishing the amount due to Read to be $12,566.98 and the interest thereon from February 21, 1884, less the sum of $1,000, with interest thereon from the 25th of July, 1885, the date of the commencement of this action, to wit, amounting to $13,139.59 at the date of the decision; that the company have leave to redeem the said premises within four weeks after service of a copy of the judgment by paying such an amount, otherwise a sale was directed with the usual provisions in foreclosure cases.

Other portions of the findings will be referred to in the opinion.

On March 26, 1886, the attorney for Read entered a judgment

upon this decision, commencing with the following statement : " It is now, on motion of O. O. Cottle, attorney for the plaintiff, ordered, adjudged and decreed that the defendant, the New York, West Shore and Buffalo Railroad Company, is indebted unto the plaintiff by reason of the matters alleged in the complaint in the sum of $13,139.59 over and above the counterclaims alleged in the defendants' answers, and that such sum is a lien on the land and premises described in the complaint."

Read appealed to the General Term from so much of the said judgment as required him to execute a deed, and from so much as deducts from the amount adjudged to be unpaid of the award made to him the sum of $1,000 damages, and from so much as permits a redemption of the lands without paying him the full sum awarded to him by the commissioners, with interest, and he further appeals because no costs are awarded him in the action.

*Edmund P. Cottle,* for the appellants.

*Daniel H. McMillan,* for the respondents.

WARD, J. :

The appellants seek a reversal of a portion of the judgment appealed from upon the ground that the counterclaim allowed by the trial court and deducted from the award was illegal and unauthorized ; that this action is simply to enforce the award of the commissioners in condemnation proceedings, and that the law in such a case does not permit deductions for counterclaims or demands of any character which may exist in favor of the railroad company ; but that if a counterclaim were permissible in such an action, the assumed counterclaim does not come within the provisions of the Code of Civil Procedure upon the subject, and that in no event could this counterclaim be allowed, because it appeared upon the trial of this action that the taxes claimed to be unpaid were not valid liens upon the condemned premises, and that the plaintiff had not committed any breach of his contract and consequently no damages had accrued to the defendant.

We will first consider the objection raised as to the taxes.

The findings of the trial court as to the validity and extent of the taxes, and that Read had committed a breach of his contract,

and that the defendant was not in default, are sustained by the evidence.

Many objections appear in the brief of the learned counsel for the appellants as to the validity of the taxes and the procedure to enforce their collection, but it is difficult to see how we can pass upon this question upon this appeal.

The trial court found : " That a fact litigated upon the trial of the said issues (the proceeding for the appointment of commissioners) was, as to whether or not the said railway company or said Read had broken the said contract and was in default in respect to carrying out its provisions; that the decision of the said court necessarily involved the decision that John J. P. Read, the plaintiff in this action, had failed to carry out the provisions of his contract with the said railway corporation. That said decision necessarily involved the further fact that there were taxes which were valid liens and incumbrances upon the said land at the date of making the said contract, to wit, on the 31st day of March, 1883. That the said order appointing commissioners in the said condemnation proceeding was never appealed from."

These findings seem to be supported by the evidence, and it would seem that the failure of Read to appeal in that proceeding (which the statute permitted him to do) concludes us here and that the decision therein is *res adjudicata* upon the question of taxes.

In the proceeding to take these lands by condemnation the Special Term of this court did not act as a court of limited jurisdiction, and the jurisdiction having been acquired, the proceeding cannot be attacked collaterally in this action. (*In the Matter of the Application of the N. Y. C. & H. R. R. R. Co. for the Appointment of Commissioners to Appraise Lands,* 64 N. Y. 60, 62, and cases cited ; *Allen* v. *Utica I. & E. R. R. Co.,* 15 Hun, 80.)

The judgment entered by the appellants' attorney contains the following provision : " The sale directed by this judgment is to be made subject to all taxes and assessments which have become liens subsequent to February 21st, 1884, and no part of the moneys arising on the sale is to be applied to the judgment of those or any prior taxes or assessments, or to redeem the property from any sales for taxes or assessments."

In the condemnation proceeding money was set apart from the award to protect the railroad company from taxes, and the money was deposited in the Erie County Savings Bank. The judgment does not interfere with that deposit in any manner, but seems to leave it intact for the purpose for which it was made; and by the portion of the judgment just quoted, and which has not been appealed from, the question of the taxes seems to have been eliminated from the case, which presents another objection to considering the exceptions of the appellant as to taxes.

The important question upon this appeal is, whether the court was authorized, as a matter of law, to allow the counterclaim.

By section 501 of the Code of Civil Procedure the counterclaim "must tend in some way to diminish or defeat the plaintiff's recovery, and must be one of the following causes of action against the plaintiff : *  *  *

" 1. A cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim or connected with the subject of the action.

" 2. In an action on contract, any other cause of action on contract existing at the commencement of the action."

It is true, as claimed by the appellants' counsel, that the statute gave no authority to the commissioners to allow the counterclaim, but in this action, to enforce the award and for equitable relief, the rules governing pleadings in actions apply.

Section 18 of chapter 140 of the Laws of 1850, the Railroad Law, as amended, which applied to these proceedings, provides that the lien on such real estate for such award may be enforced and collected by an action at law or in equity in the Supreme Court; but, without this provision of the statute, the matter is plainly one of equitable cognizance.

Does the claim arise out of the transaction set forth in the complaint, or connected with the subject of the action?

This contract relates to the very land in controversy. It was executed pending the condemnation proceedings and with a view to their adjustment. It was interposed by the answer of Read to defeat the condemnation proceeding, and would have defeated those proceedings had not he been shown in default in regard to the taxes. The contract formed an important element upon the trial of this action,

and it was certainly connected with the subject of the action. (*Carpenter* v. *Manhattan Life Ins. Co.*, 93 N. Y. 552, and see *Davidson* v. *Alfaro*, 80 id. 660.)

Under the 2d subdivision of section 501 of the Code, a counterclaim may be allowed, in an action on contract, on any other cause of action on contract existing at the commencement of the action.

A judgment is a contract of record (1 Pars. Cont. [7th ed.] *8), and a judgment was a contract at common law, and is such under the Code of Civil Procedure. It is a cause of action upon contract and may be used as a counterclaim on contract. (*Cornell* v. *Donovan*, 3 N. Y. St. Repr. 261; 13 id. 704, 741; 14 id. 687; *Badlam* v. *Springsteen*, 41 Hun, 160; *Clark* v. *Story*, 29 Barb. 295; *Barnes* v. *Smith*, 16 Abb. 420; *Mahaney* v. *Penman*, 4 Duer, 603.)

Section 17 of the Railroad Act, quoted, provides, upon the coming in of the report of commissioners in condemnation proceedings, that "the company shall give notice to the parties or their attorneys to be affected by the proceedings, according to the rules and practice of said court at a General or Special Term thereof, for the confirmation of such report, and the court shall thereupon confirm such report, and shall make an order containing a recital of the substance of the proceedings in the matter of the appraisal and a description of the real estate appraised, for which compensation is to be made, and shall also direct to whom the money is to be paid, or in what bank and in what manner it shall be deposited by the company."

The 18th section provides that a certified copy of the order so to be made shall be recorded at full length in the clerk's office of the county in which the land described in it is situated, and thereupon, upon the payment or deposit by the company of the sum to be paid as compensation for the lands, etc., the company shall be entitled to enter upon and take possession of the lands and use the same for the purposes of its corporation. And, as we have seen, the amount of the award becomes a debt against the company and a lien upon its real estate, and can be enforced by a proper proceeding in the courts. The award, when thus recorded, becomes in substance and effect a judgment for the payment of money secured upon real estate, a contract; and we see no difficulty in permitting the damages claimed by the defendant railroad company under its contract with Read to be counterclaimed as against this judgment. Indeed,

the learned counsel for the appellants, in the judgment in this action which he has entered, states that the company "is *indebted* unto the plaintiff by reason of the matters alleged in the complaint in the sum of $13,139.59 over and above the counterclaims," etc.

It follows from these views that the chief contention of the appellants upon this appeal is without merit.

The action was an equitable one, and the costs were in the discretion of the trial court, and the record does not disclose any good reason why we should interfere with that discretion.

The judgment appealed from should be affirmed, with costs.

All concurred.

Judgment affirmed, with costs.